## WALLACE *vs.* HENRY.

Where a note is made payable in " Arkansas State Bank paper," the State Bank being one institution, not susceptible of division, the meaning of the instrument is to be gathered from the words used, as they were generally understood at the time.

Bills payable at either branch of that bank would be good in discharge of that instrument, at maturity; and, in a suit upon it, there being a difference in the value of the paper of the different branches, the judgment will be for the value of so much paper of that branch which is farthest below par.

Where damages cannot be assessed by calculation, the Court has no right to take the assessment from the jury.

In an action on a note or bond payable in "Arkansas State Bank paper," the Court cannot assess the damages without the consent of parties; and a statement in the record that "neither party required a jury, shows no such consent.

And though the judgment in such case was in favor of the party prosecuting the writ of error, it will be reversed, being given without authority of law.

THIS was an action of covenant, determined in the Washington Circuit Court, in November, 1842, before the Hon. JOSEPH M. HOGE, one of the circuit judges. Alfred Wallace sued John Douglas, John F. King, and James Henry, on a bond, due Dec. 25, 1841, for $299 48 cents, " in Arkansas State Bank paper," with interest at ten per cent. from date till paid. Douglas and King not being served, the action was discontinued as to them. Henry having made default, a writ of inquiry issued, and a jury were returned to the next term of the Court. The record then states: " This day came the said plaintiff, by attorney; and neither party requiring a jury, this cause was submitted to the Court, and all and sigular the premises being seen and heard, and by the Court here fully understood, and mature deliberation thereon had, it appears to the Court here that the said plaintiff ought to recover of the defendant his damages on account of the premises: Therefore, it is considered by the Court, that the said plaintiff have and recover of the said defendant two hundred and seventy-nine dollars and forty-five cents, sustained by reason of the breaches of covenants in the said plaintiff's declaration mentioned, deducting 22½ per cent., the difference between sound funds and Arkansas State Bank paper and the costs," &c. Wallace afterwards appeared, and moved the Court for a new trial, on the ground that

14

the Court erred in deducting 22½ per cent. from the covenant. The motion being overruled, he excepted, and set forth the covenant declared on, and preserved the evidence of the witness, who swore " that, on the 25th December, 1841, the time mentioned in said covenant for the payment of the State Bank paper therein mentioned, the notes of the Principal Bank of the State of Arkansas, were at par, and that notes of the branches at that date were worth from 75 to 80 cents in the dollar."

Wallace brought error, and presented the same point raised by his motion for a new trial. The defendant appeared in this Court, by attorney, for the first time, and entered his joinder in error.

The case was argued here by *Pike & Baldwin,* for plaintiff in error, and by *D. Walker,* contra.

*By the Court,* PASCHAL, J. We will first direct our attention to the point relied on by Wallace, and by the decision of which he contends that he was prejudiced. He contends that, as there was a difference between the value of the paper of the State Bank payable at Little Rock, and the value of the paper payable at its branches, he is entitled to that which is most valuable. This is, we conceive, a one-sided view of the subject, and such as would, probably, not have occurred, had the relative value of the notes of the Principal Bank and branches been reversed.

Within a legal and constitutional view of the subject, the State Bank is a single institution. It is a single corporation, and not susceptible of division. If the party, therefore, desired his covenant to be payable in the paper money of any particular branch, he should have had it so expressed. Failing in this precaution, the intention of the parties is to be gathered from the words of the contract, as they were generally understood at the time. See *Dillard vs. Evans,* 4 *Ark. Rep.* 175. The premises in the case quoted are, perhaps, too broadly stated; still, by the rules of interpretation therein expressed, and the uniform decisions on the subject of contracts of this kind, we think we may gather the true intention of the parties to this covenant. If, by "Arkansas State Bank paper," the covenantor intended to bind him-

Wallace *vs.* Henry.

self to pay in the bills of that institution, payable at any particular point, he certainly used very inapt words to convey the idea. For any thing that we can see, there would be as much propriety in the plaintiff contending that he had a right to demand the bills payable at the Batesville or Fayetteville branch, as in the bills payable at Little Rock. If he desired the bills of either description, would it not have been easy to have had that description inserted in his covenant? But the covenant being payable in general terms, the bills payable at or by either branch would have been a good discharge at maturity. There being a failure, therefore, to pay, and the Court having heard the evidence as to the value of the paper, would certainly have been competent, under a proper issue, to have determined the amount of damages. The arguments of the plaintiff's counsel are ingenious and plausible, but we think the positions untenable. The Court, in every contract, are to look to the intention of the parties, as far as that intention can be ascertained. In answer to some of the arguments put, we should say, that, had the covenant been payable generally, *in the paper of the Arkansas banks,* such an expression would have given to the party bound, the alternative of paying in the paper of either of the banks. If a contract is payable in wheat, corn, or horses, the party who is bound to pay is presumed to have reserved to himself the right of electing in which of these he will pay. The whole error of the plaintiff, in this case, arises in attempting a distinction where there is, in fact, no legal difference.

Having considered this objection, we are to dispose of one of even more difficulty. The defendant, in this case, never appeared, although served with process. The covenant not being for the direct payment of money, a judgment by default was correctly entered. This judgment was only interlocutory, and the Court did right in awarding a writ of inquiry. And the question now arises: could the Circuit Court inquire of the damages without the intervention of a jury? At common law, a judgment is the conclusion of law upon facts found or admitted by the parties, or upon their default in the course of the suit. *Tidd's Pr.* 841. All issues of fact were found by the jury, and the judgment was the mere conclusion of law, and not the opinion or judgment of the judge. A judgment by default is merely interlocuto-

ry; but where the *quantum* of damages depends on figures, and may as well be ascertained by the master as before a jury, the Court, under our practice, may assess the damages. See 1 *Tidd's Pr.* 514, *et sequitur.* But these are cases where the action was on promissory notes or bills of exchange, and other contracts for the direct payment of money. 8 *Term Rep.* 395. And in 4 *Term Rep.* 493, which was an action on a foreign judgment, the Court refused to make the rule absolute for reference to the master, saying this was an attempt to carry the rule farther than had yet been done; and as there was no instance of the kind, they would not make a precedent for it. In a subsequent case, the Court refused to make the rule absolute in an action upon a bill of exchange for *foreign* money, the value of which is uncertain, and can only be ascertained by a jury. 5 *T. R.* 87. *Cro. Eliz.* 536. *Cro. Jac.* 617. "And whatever theories may be indulged, the assessment of damages by a jury, where it cannot be done by calculation, is a procceding which the Court has no right to depart from." See the *New-York Appendix to Tidd's Practice,* 143, 144. In this, many useful rules may be found.

Our statute on the subject does not materially change the common law. "If the defendant shall fail to file his plea, or other pleading, within the time prescribed by this act, or the rules of practice of the Court, an interlocutory judgment shall be given against him by default, but such judgment may be set aside for good cause shown, at any time before the damages shall be assessed, and on such terms as shall be just." *Rev. St., ch.* 116, *sec.* 77, *p.* 630. And by the 80th section, " whenever an interlocutory judgment shall be rendered for the plaintiff by default, or upon demurrer, in any suit founded on any instrument of writing, and the demand is ascertained by such instrument, the Court shall assess the damages, and final judgment shall be given thereon." And, by *sec.* 81: " In all other cases of such interlocutory judgments, the damages shall be assessed by a jury empannelled in the Court for that purpose; and every such inquiry of damages shall be made at the term next after the term at which such interlocutory judgment shall be rendered, unless the Court shall direct it to be made at the same term." By the 98th section of same statute—"All issues of fact, joined in any suit at law, in any court of record, shall be tried

by the Court, by jury, or by arbitrators: First, the trial shall be by the Court, where neither party shall demand such trial. Third, it shall be tried by arbitrators, on the agreement of the parties to refer the matter in dispute to arbitrators."

Had an issue of fact been formed, it would seem to have been the duty of the Court, contrary to common law principles, to have tried such fact, unless one of the parties had demanded a jury. But here the defendant made default; and, although the record states that " neither party required a jury," yet, as there is no pretence that the, defendant was in court by appearance; and the damages being uncertain, and not to be ascertained by the mere computation of figures, upon certain premises, but had to be ascertained by witnesses, we are at a loss to discover from whence the Court derived this authority to inquire of the damages. The bare statement, that neither party required a jury, certainly cannot be tortured into a consent of both parties to submit the inquiry of damages to the consideration of the Court, even if the Court possesses that power, especially where one party never entered his appearance. There was, therefore, in our opinion, clearly error in the Court determining an inquiry of damages without the intervention of a jury. In other words, the jury returned by the writ of inquiry not having been sworn, and no jury having assessed the damages in accordance with the order of the Court, and the law in such cases, there was no finding upon which to base the judgment of the Court. There was no finding of facts to authorize the conclusion of law, and the Circuit Court improperly gave judgment.

The only inquiry, therefore left for us is to determine what judgment to render under the peculiar state of the case. That Henry might have prosecuted his writ of error, and had a reversal of judgment, there can be no doubt. But Henry now appears here, and by joining in error affirms, that the record in fact presents no error. And by the bill of exceptions it does not, in fact, appear under the evidence, that either party has been prejudiced. Nor is this one of the cases where the party seeks to reverse his own judgment for his own errors, because this is not an error of the party, but of the Court. 2 *Tidd's Pr.* 1052. 3 *Burr,* 1772. The whole question, therefore, turns upon the power of the Circuit Court to render judgment upon

the record.    We must therefore assume, that, as the evidence was improperly heard, and the damages improperly assessed, the Court could not properly render a judgment.    And although the judgment was in favor of the party prosecuting the writ of error, yet, as that was judgment without authority of law, it becomes our duty to reverse the judgment, for " error appearing on the face of the record."    *Rev. St., chap.* 117, *sec.* 34.    There is such defect and imperfection in the record as cannot be supplied in this Court.    *Ib.* 35.

Judgment reversed.